UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | * | CIVIL ACTION NO. 23-1931 |
| OF TEXAS PETROLEUM | * | |
| INVESTMENT COMPANY AS OWNER | * | SECTION: "A"(3) |
| OF THE VESSEL LA 5580 FF AND | * | |
| VESSEL LA 5910 FN IN A CAUSE FOR | * | JUDGE JAY C. ZAINEY |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | MAGISTRATE JUDGE EVA J. DOSSIER |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER AND REASONS**

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 33)** filed by Defendant, QBE International Markets and Lloyds Syndicate 1036 ("QBE"). Claimant, James Pierre, Jr., opposes the motion. The motion, submitted for consideration on July 24, 2024, is before the Court on the briefs without oral argument. For the reasons that follow, QBE's **Motion for Summary Judgment** is **GRANTED IN PART AND DENIED IN PART**.

**I.      Background**

This case arises out of a collision of two vessels, both owned by TPIC, in the inland waters of Plaquemines Parish, Louisiana, on October 10, 2022. At the time of the accident, Pierre was an employee of Eagle Services, LLC ("Eagle"), serving as a contract hand for TPIC. (Rec. Docs. 35-6, 35-7). On the day of the accident, Clayton Hall, a TPIC employee, traveled to Well No. 23 to conduct maintenance work due to its malfunction. (Deposition of James Pierre, Jr., Rec. Doc. 35-5, 29:22-25).[1] Because Well No. 23 ran into the same pipeline as Well No. 64, Hall dispatched Pierre to stop the flow in Well No. 64. (*Id.* at 43:15-25). Once Pierre cut the flow, he was to remain there until instructed to reopen the flow. (*Id.* at 45:7-13). However, Pierre's phone

---

[1] All deposition citations refer to the page numbers of the depositions themselves, not to the page numbers in the CM/ECF headers.

battery died and, after waiting fifteen minutes, he boated back to Well No. 23 to wait with Hall. (*Id.* at 45:14-46:3). On his way back, Pierre turned into a canal as Hall boated in his direction and the two boats collided, injuring Pierre. (*Id.* at 56:7-9).

At all relevant times, QBE had issued a commercial general liability policy to Eagle, identified as policy number 22CGLN14499. Eagle's contract with TPIC through which Eagle provided laborers to TPIC, also known as the Master Service Agreement ("MSA"), contains a reciprocal indemnity agreement between the parties, under which each party agreed to defend and indemnify the other, dependent upon the claim or claimant. (MSA, Rec. Doc. 33-7, at 9-10). In this instance, Eagle is contracted to indemnify TPIC for any claims by Eagle employees against TPIC. (*Id.* at 9).

Following the collision and Pierre's injuries, Pierre filed suit in state court in Plaquemines Parish. In response, TPIC filed a Limitation of Liability proceeding in this Court on June 7, 2023 (Rec. Doc. 1). TPIC also made a demand upon Eagle and QBE to defend and indemnify TPIC in the suit under the MSA. QBE agreed to do so. Pierre filed an answer and a claim in the limitation on September 6, 2023, and amended on March 8, 2024, adding QBE and the other employee allegedly at fault, Clayton Hall, to the suit. (Rec. Doc. 17). All parties have now separately moved for summary judgment. Relevant to this Order, QBE has moved for summary judgment, asserting that Pierre's claim is excluded by an employee exclusion and, in the alternative, that QBE's liability should be limited to that of TPIC.

## II.     Legal Standard

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

## III.   Discussion

### 1. *Coverage*

QBE first moves for summary judgment on the entire claim, arguing that the policy exclusions eliminate coverage for the issues in this matter. Specifically, QBE cites the exclusion

entitled "Employer's Liability," which states that the following is excluded: "'Bodily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business[.]" (Rec. Doc. 33-6, at 8). However, the exclusion does not apply to liability assumed by the insured under an "insured contract." (*Id*.). Therefore, QBE must make two showings: (1) that Pierre is an "employee" under the policy; and (2) that Eagle did not assume liability under an "insured contract." *See Talley v. Blue Cross Blue Shield*, 760 So. 2d 1193, 1195 (La. App. 3 Cir. 5/3/00) (noting that the burden is on the insurer to prove that a coverage exclusion applies (citing *Landry v. La. Hosp. Serv., Inc.*, 449 So. 2d 584 (La. App. 1 Cir. 1984))).

QBE has successfully shown that Pierre is an "employee" under the policy. The term "employee" is a clear term, but also includes "leased worker[s]" under the policy. (Rec. Doc. 33-6, at 18). Here, the parties do not contest that Pierre is an employee of Eagle. (*See* Deposition of James Pierre, Jr., Rec. Doc. 33-5, at 14:7-15:4; *see also* Rec. Docs. 33-4 & 37-1 (showing no dispute of material fact as to whether Pierre was an employee of Eagle)). Additionally, his injury was clearly sustained in the course of employment for Eagle.

However, as noted above, there is a carve-out to the exclusion, which states that if the liability of the insured—in this case, Eagle—arises from the assumption of liability under an insured contract, then the exclusion does not apply. The policy defines "insured contract" in several ways, but includes the following catch-all definition:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(*Id.* at 19). It is apparent that QBE did not discuss this carve-out of the exclusion; instead, it appears to discuss an endorsement. However, to the extent that QBE's argument refers to this provision, it states that the carve-out only "applies to a contractual indemnity situation where . . . Eagle owes contractual indemnity to a party such as TPIC." (Rec. Doc. 40, at 3). QBE further states that the purpose is to ensure that the employee exclusion "would not act as an impediment to that contractual indemnity obligation." (*Id.* at 3-4).

Reviewing this argument, the policy, the MSA, and the case law, the Court does not find that QBE has carried its burden in demonstrating that it is entitled to summary judgment. First, assuming QBE's argument does apply to this carve-out (and not a separate endorsement), the Court agrees that the provision applies to situations in which Eagle owes contractual indemnity, and that the employee exclusion should not act as an impediment. The MSA between Eagle and TPIC clearly creates such an indemnity obligation, stating that Eagle "agrees to release, protect, defend, indemnify and hold harmless [TPIC], its officers, directors, employees, joint owners, and their invitees" in matters, including founded in tort, "arising in connection herewith in favor of [Eagle], [Eagle's] employees, [Eagle's] subcontractors or their employees, or [Eagle's] invitees on account of bodily injury." (Rec. Doc. 33-7, at 9). It appears clear that the indemnity provision exists for cases such as this one. Indeed, it would be illogical to exclude coverage for the very claims for which Eagle agreed to indemnify TPIC.

Further, the indemnity clause falls directly within the "insured contract" definition, which includes indemnification of municipalities in connection with work performed for said municipalities. (Rec. Doc. 33-6, at 19). Accordingly, the policy clearly contemplates indemnification clauses in the "insured contract" provision. Finally, Louisiana courts appear to support coverage in similar situations. In *Rogers v. Integrated Exploration and Production, LLC*,

the court considered similar facts, in which there existed a reciprocal indemnification provision triggered whenever the employee of one party sued the other, and the MSA required that the parties obtain commercial liability insurance and name one another additional insureds. 265 So. 3d 880, 883-84 (La. Ct. App. 4 Cir. 2/20/19). The policy contained an identical definition of "insured contract." *Id.* at 893. The court, after reviewing the MSA, the policy, and the policy's definition of "insured contract" rejected "the argument that the endorsement precludes coverage" for the other party to the MSA. *Id.*

Having reviewed the above, this Court believes that the employee exclusion contains a carve-out for the indemnification provision in the MSA, and that QBE has failed to carry its burden in proving why that carve-out does not apply. Therefore, the motion for summary judgment is **DENIED** as it relates to the coverage issue.

2. *Limitation of Liability*

In the alternative, QBE requests that the Court limit QBE's potential liability to the amount for which its insured is liable, citing *Crown Zellerbach Corp. v. Ingram Industries, Inc.* In *Crown Zellerbach*, the Fifth Circuit held that an insurance policy may limit the insurer's liability to whatever the insured is legally liable for. *Crown Zellerbach*, 783 F.2d 1296, 1302 (5th Cir. 1986). The decision allows insurers to assert personal defenses, including policy limits based upon the insured's liability. *Id.* at 1299. While *Crown Zellerbach* provisions permit insurers to limit their liability to that of the insured, the case did not establish, nor is this Court aware of any Louisiana court that has established, specific language necessary to invoke or effectuate the limitation. *See Rogers v. Texaco, Inc.*, 638 So. 2d 347, 349 (La. App. 4 Cir 5/26/94); *SCF Waxler Marine, LLC v. M/V Aris T*, No. 16-902, 2017 WL 3894705, at *2 (E.D. La. Sep. 6, 2017) (Zainey, J.).

The policy language here states that QBE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Rec. Doc. 33-6, at 7). This provision is limited by Section III of the policy, which produces the policy's maximum limits. (*See id.* at 15-16). While it is true that in each of *Waxler* and *Crown Zellerbach*, the policy language was more explicit than the language at issue here, this Court believes that the language "becomes legally obligated to pay" permits an insurance company to limit its liability alongside the insured, if the insured's liability is indeed limited. A virtually identical provision was found by a Louisiana court as falling within *Crown Zellerbach* because the clause "state[d] that the insurance company's liability [was] limited to that of the insured." *Rogers*, 638 So. 2d at 348. This Court finds, in accordance with the above precedent, that the provision permits QBE to limit liability to the amount for which the insured is liable, *if* the insured's liability is limited.[2]

Pierre's argument in opposition is unpersuasive. He argues that the "limits of insurance" section is the only limitation provision, and that no *Crown Zellerbach* language is included there. However, as described above, that section dictates the policy's maximum limits (i.e., the most the policy will pay for any one occurrence). The Court does not find these provisions to contradict one another, and therefore sees no ambiguity. QBE's motion for summary judgment is **GRANTED** as to the limitation issue, and QBE will be entitled to limit its damages to those for which its insured is liable.[3]

Accordingly;

---

[2] Nothing in this Order shall be construed as limiting the liability of any party in this matter. The issue of limitation of liability remains to be determined at trial. This Order simply finds that *if* TPIC's liability is limited under the statute, then QBE's liability will be limited to the same amount. If there is no limitation of liability for the insured, then QBE's liability will not be limited.

[3] Pierre also argues that Hall's liability should not be limited under *Crown Zellerbach*. QBE does not contest this point, and the Court agrees with Pierre. The application of *Crown Zellerbach* only extends to QBE's coverage and indemnification of Eagle and TPIC.

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 33)**, filed by

Defendant, QBE International Markets and Lloyds Syndicate 1036, is **GRANTED IN PART**

**AND DENIED IN PART**.

September 5, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE